**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **ANTHONY B. MCKENZIE, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 05-0138-CG-C** |
| ) | |
| **CITATION CORPORATION, LLC.,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the motion for summary judgment and brief in support of defendant, Citation Corporation, LLC. ("Citation") (Docs 34, 35), plaintiffs' amended response thereto (Doc. 48), Citation's reply (Doc. 49), Citation's motions to strike (Docs. 50, 51), plaintiffs' response to the motions to strike (Doc. 57), and Citation's reply (Doc. 58).

**FACTS**

Plaintiffs allege that because of their race they endured disparate treatment, retaliation, and a hostile work environment while employed at Citation. (Complaint). Plaintiff, William Boggan, was employed by Citation beginning in 1989, was discharged in 1991, rehired in 1992, and then went on strike on July 11, 2005, and did not return when offered a position in August 2005. (Boggan Depo. pp. 12-13, 15). Christopher Broughton was employed by Citation from August 1999 until May 11, 2006 (Boggan Depo. p. 20). Russell Hammond was employed at Citation from May 6, 1999, until he resigned on October 4, 2005. (Hammond Depo. pp 18-19, Ex. 3). Anthony McKenzie was employed by Citation from April 19, 2001, until he resigned

1

"due to unwarranted health problems" on January 2, 2007. (McKenzie Depo. p. 15, Moncrief Aff. Att. L).

During the plaintiffs' employment, Citation had an anti-harassment policy which designated persons to be contacted if an employee had a complaint.  Citation also entered into a labor agreement with the local union which included an agreement not to discriminate on the basis of race.  The labor agreement outlined a grievance procedure by which union members could file complaints.  All employees were given a copy of the policies, but management did not receive any training concerning the policies until April and May 2003. (Moncreif Depo. pp. 45-47, 55).

In 2002 or 2003, plaintiff, Anthony McKenzie, believing he had been racially harassed at Citation, met with an attorney to discuss his legal rights.  (McKenzie Affid p. 1).  Over 200 present and former African-American employees of Citation joined McKenzie in his meeting with the attorney. (McKenzie Affid. p. 1).  The attorney, Jeffrey Robinson, prepared EEOC charge forms alleging discrimination. (McKenzie Affid. p. 2, Robinson Affid. pp 1-2). McKenzie filed EEOC charges on February 25, 2003, October 20, 2003, and February 13, 2004. (McKenzie Depo. Ex. 9, 10).  McKenzie's EEOC charges resulted in a determination in August 2004 that "there is reasonable cause to believe that the Charging Party is being subjected to racially hostile and intimidating work environment because of his race, Black, in violation of Title VII." (Plaintiff's Ex. 17).  A notice of right to sue letter was issued on November 16, 2004. (Plaintiff's Ex. 18).  Each of the other named plaintiffs in this case filed EEOC charges of discrimination. (Plaintiff's Ex. 6).  The EEOC came to the same conclusion with regard to the EEOC charges brought by Christopher Broughton, Russell Hammond, and William Boggan: that

they were being subjected to a racially hostile and intimidating work environment because of their race, and a notice of right to sue letter was issued as to each of them on November 10, 2004. (Plaintiff's Exs. 19 - 24).

Many other African-American employees also filed EEOC charges during this time period. Edmond Gross alleged that a white supervisor, Kenny Roley, told him "to get to work before we string you up" while Roley formed a noose with electrical wire. According to Gross, he had filed a grievance, but nothing was done about it. (Gross EEOC Affid.).

Robert Hill alleged in his EEOC charge several incidents of racial harassment from white supervisors. According to Hill, white supervisors made racially derogatory comments towards black employees. These included a statement about the KKK, a statement that "black employees aren't good for nothing, and a supervisor calling Hill "nigger" and telling him that if he did not do his job "I will see you get fired." (Hill EEOC Affid.).

Trini R. Watson also filed an EEOC charge alleging he had witnessed numerous incidents of racial harassment against black employees. According to Watson, a white supervisor, Mr. Avery, frequently called African-Americans "boy" and "bubba." Watson alleged that African-American employees were treated differently than white employees. (Watson Affid.)

Johnny Straughn filed suit against Citation for racial discrimination alleging that a white supervisor, Charlie Yoder, used racial slurs, including the word "nigger." (Straughn complaint, Plaintiff's Ex. 10).

Various grievances alleging racial discrimination were also filed by the plaintiffs. For example, Hammond testified at his deposition that he had filed a grievance with the Union when

his supervisor referred to him as "boy." (Hammond Depo. p. 72).  According to Hammond, his supervisor, Kenny Roley, said "Boy, your people can't get a mother fucking thing right." (Hammond Depo. pp. 59-60).   Hammond says Roley called him "boy" twice. (Hammond Depo. pp. 71-72).  Hammond also reports that McKenzie showed him a noose made with white nylon rope that had been found in the workplace. (Hammond Depo. pp. 146-147).  According to Hammond, he had seen some white employees wear Confederate t-shirts to work. (Hammond Depo. p. 151).  Hammond also found offensive a picture of a monkey that was put on the bulletin board near the time clock, but admits that the picture may have been of a cat. (Hammond Depo. pp 148-149).  Hammond believes it was racial harassment when he saw Kenny Roley kick a black employee, Darren Samuels, in the rear end, but admits that Samuels said they were playing. (Hammond Depo. p. 156).

Christopher Broughton filed a grievance in January 2002 with the Union complaining that a white lead man at Citation, Harlon Henry, had repeatedly called him "boy." (Plaintiff's Ex. 12).  Six days later the grievance was addressed by Henry apologizing and a note being placed in Henry's file stating the circumstances and that if it happens again, stronger disciplinary action will be taken. (Plaintiff's Ex. 12).  That is the only time Broughton remembers being called "boy" by a Citation employee. (Broughton Depo. p. 69).  Broughton filed another grievance on April 4, 2003, alleging that his supervisor, Roger Cash, had said that a retirement party was going to be held at the KKK camp. (Plaintiff's Ex. 12).  Management held a consultation with Roger Cash on April 10, 2003, in which Cash asserted that the KKK comment was not intended to offend any one.  Cash was told that any reference to the KKK was inappropriate and that in the future he should not use  any type of racial overtone or comment.  A written record of the

4

consultation was made a part of Cash's permanent file.  (Plaintiff's Ex. 16).  Broughton

complained in another grievance, dated March 7, 2005, that a hangman's noose had been found

in the locker room. (Plaintiff's Ex. 12, Broughton Depo. pp. 96-97).   Previously, a noose had

been found lying on the toolbox of a white supervisor, Rick McNew. (Broughton Depo. p. 93).

According to Broughton, he heard Harlon Henry, a white supervisor, tell a black employee,

Richard Hill, that he would not have recognized him if he had not seen his teeth. (Broughton

Depo. pp. 78-79).  However, everyone working in the area where Richard was working was

covered in black dirt. (Broughton Depo. p. 80).  Broughton admits that he never heard a white

supervisor call him or any other African-American employee a "nigger" and that he has not

heard any racial slurs other than those mentioned above. (Broughton Depo. pp. 65, 81, 82, 88).

Broughton reports that Kenny Roley uses profanity towards everyone, not just African-

Americans. (Broughton Depo. p. 88).

McKenzie filed a grievance September 6, 2001, claiming that supervisor, Charlie Yoder,

had mistreated people and that Yoder has a problem with race. (Plaintiff's Ex. 13).  A note, dated

September 7, 2001, indicates that the maintenance manager brought McKenzie and Yoder into

his office to discuss the grievance, but that McKenzie refused to discuss the matter, stating that

everything he had to say was in his grievance.  (Plaintiff's Ex. 13).   According to McKenzie, his

grievances usually ended with the management telling a person to apologize but never rising to

the level of any real discipline other than a memo to the file. (McKenzie Aff. p. 2, ¶ 3).

McKenzie claims Yoder referred to him as a "mother fucking ass." (McKenzie Depo. p. 50).

McKenzie testified that Yoder has never used the word "nigger." (McKenzie Depo. p. 51).

McKenzie reports that Kenny Roley once told McKenzie: "Well, get your black ass out of the

plant." (McKenzie Depo. p. 53).  According to McKenzie, racial slurs like "boy" were used by employees, including supervisor, Harlon Henry.  (McKenzie Depo. p. 54).  McKenzie corrects Henry when he uses "boy" and Henry apologizes each time. (Broughton Depo. 57).   McKenzie has also been called "Bubba" by Jimmy Jenkins. (McKenzie Depo. p. 57).  McKenzie saw the noose on the toolbox on May 28, 2003. (McKenzie Depo. pp. 60-62).  After seeing the noose, McKenzie said he was emotionally distressed and asked to be dismissed early and went home. (McKenzie Depo. p. 63).  McKenzie also reports that Roger Cash told him "to fix the God damn glomarator."  (McKenzie Depo. pp. 78-79).  McKenzie filed a grievance regarding the incident and Cash never cursed at McKenzie again. (McKenzie Depo. p. 80).  White supervisors reportedly told McKenzie that he would not last long at the company if he continued to speak up for blacks. (McKenzie Depo. p. 100, McKenzie Aff.).

On February 24, 2003, plaintiff, William Boggan, filed a grievance claiming that "Kenny Roley came to the pressure pourer room cursing and raising hell because the stopper rod was leaking iron."  (Plaintiffs' Ex. 14).   Boggan stated on the grievance form that he did not know why Roley acted this way.  The grievance form indicates that the grievance was later dropped. (Plaintiffs' Ex. 14).  Roley never called Boggan "nigger." (Bogan Depo. pp. 37-38).  However, according to Boggan, Roley would say "you people" referring to African-Americans. (Boggan pp. 48-49).  After being disciplined in May 2003, Roley "kind of cooled down some. " (Boggan Depo. p. 46).  Bogan did not hear Roley make any racial slurs after Bogan filed his EEOC charge. (Boggan Affid. p. 50).

Plaintiff, Anthony McKenzie, filed a Chapter 13 bankruptcy petition prior to filing this lawsuit.  McKenzie's bankruptcy schedules, which he signed on May 30, 2003, do not list a

claim for racial discrimination against Citation as a potential asset.[1]   The court has checked

McKenzie's bankruptcy case filing through pacer, Case No. 03-13116-WSS-13, and found that

his Chapter 13 plan was confirmed on July 22, 2003. (Bankr. Doc. 6).  McKenzie's plan

proposed to pay all creditors, including nonpriority, unsecured claims 100% of their claims over

sixty months[2]. (Bankr. Doc. 6).  McKenzie's bankruptcy case was dismissed on March 22, 2006,

upon the estate being fully administered. (Bankr. Doc. 52).


## LEGAL ANALYSIS

### I. Motions to Strike

#### A. Plaintiffs' Response to Summary Judgment

Citation first moves to strike plaintiffs' response to summary judgment on the basis that it

exceeds the 30 page limit mandated by Local Rule 7.2(b). (Doc. 50).  Plaintiff's response brief is

36 pages in length. (Doc. 48).   Briefs are limited in length for the purpose of judicial economy

and to encourage concise argument.   It is important that pleadings not be excessive to enable the

court with its limited resources and heavy case load to thoroughly review all submissions.

However, in this case, the court does not find that plaintiffs' pleading was excessive.  Although

---

[1] McKenzie's schedules list a potential personal injury claim against J&L Trucking and Alabama Citation. (Plaintiff's Ex. 25).  However, since this case does not involve a personal injury and does not involve J&L Trucking, the lawsuit listed does not appear to be related to the claims in this case.

[2] On March 12, 2004, the Bankruptcy Court granted a motion by McKenzie to modify his plan and reduce payments on the basis that the plan would pay out within the statutory amount of time given with the proposed reduction. (Bankr. Doc. 17).  Thus, this change did not affect the total amount paid to creditors over the course of the plan and all creditors were still scheduled to receive 100% of their claims through McKenzie's bankruptcy.

technically over the page limit, plaintiffs' response is typed with 1½ inch margins instead 1 inch margins as are allowed by Local Rule 5.1(a)(1).  If plaintiffs had used 1 inch margins, the pleading would clearly have met the page limitation of Rule 7.2(b).  Thus, the length of the pleading did not impose a strain on this court and Citation was not prejudiced by plaintiffs' violation of Rule 7.2(b).  Moreover, the court finds it would be overly harsh in this case to strike plaintiffs' pleading in its entirety or even the six excess pages where the violation is minor and there is no history of excessive filing or noncompliance with the local or federal rules.  Therefore, the court will deny Citation's motion to strike plaintiffs' response.[3]

**B. Evidentiary Submissions**

Citation also moves to strike portions of plaintiffs' evidentiary submissions on the basis that they 1) contain hearsay, 2) are conclusory and lack foundation, 3) contradict prior sworn testimony, 4) lack proper authentication, 5) do not constitute the best evidence, or 6) are irrelevant. (Doc. 51).  Several statements are objected to on more than one basis.  If the court determines that a statement is to be stricken, or only considered for a particular purpose, the court may decline to discuss whether it should also be struck for a second reason.

**1. Hearsay**

"The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." Macuba v. DeBoer,  193 F.3d 1316, 1322 (11th Cir. 1999) (citation and internal quotation and footnote omitted).  Hearsay is a statement made by someone other than the declarant, offered to prove the truth of the matter asserted. See FED.R.EVID. 801(c).  The Federal

---

[3]Plaintiffs' counsel is admonished, however, that in the future she should seek the court's permission to file a brief in excess of the pages limit.  Had she done so in this case, defendant would not have moved to strike and the court would not now be writing about this.

Rules of Evidence provide that a statement is not hearsay if:

> the statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity, or ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

FED. R. EVID. 801(d)(2).  Thus, statements by Citation supervisors in performance of their jobs, offered by plaintiffs against Citation, are generally not hearsay.  As such, statements such as the following do not represent hearsay:

> "The grievance usually ended with the Management telling a person to apologize but never rising to the level of any real discipline other than a memo to the file." (McKenzie Aff. p. 2, ¶ 3).

> "During the grievance proceedings they said I didn't have a knife, but they continued to assert that I threaten them..." (Watson Aff. p.2, ¶ 1).

> "Mike Webb responded, 'we just wanted to see you work.' Then before I could follow up, Kenny Roley said 'Get to work before we string you up.'" (Gross Aff. p. 2, ¶ 1).

Several of the averments objected to on the basis of hearsay do not constitute hearsay because they either do not involve statements or are not offered for the truth of the matter asserted.  For instance, an assertion that employees "became concerned about the racial discrimination, " although perhaps objectionable for other reasons, does not proffer another person's statement.  Similarly, Robinson's averments that he was contacted by Citation employees and that he discussed with them their legal rights concerning their allegations of racial and sexual discrimination also does not proffer statements offered for the truth of the matter asserted.  Robinson's affidavit supports the fact that the employees contacted him regarding alleged discrimination claims but cannot support a contention that these employees were in fact discriminated against.  In other words, the court will not consider the truth of the

9

employees' allegations on the basis of Robinson's averments, but can consider Robinson's affidavit as evidence that the employees sought legal advice from Robinson and that Robinson filed charge forms with the EEOC on their behalf.  Similarly, the court declines to strike portions of Straughan's complaint and amended complaint on the basis that they contain hearsay.  Such statements will not be considered for the truth of the matter asserted, but only for the purpose of demonstrating that Straughan previously filed a complaint alleging racial discrimination and later amended his complaint to include a hostile environment claim.

The court agrees that the following statements should be, and are hereby **STRICKEN** as hearsay:

"In response to the employer's statements regarding the hangman's noose charge, Marty Long, Black, told me that several white guys and he witnessed who hung the rope." (McKenzie EEOC Aff. p. 2, ¶ 2).

"The truth of the matter is I had heard from Mike Webb, White Leadman, that Denise Lyons was cursed by Comby Booker." (McKenzie EEOC Aff. p. 2, ¶ 4).

"Claude Jackson, black reliever in the Molding Department file a charge with the EEOC in 2002 when Roley commented to some White employees to include Shannon LNU Leadman 'that nigger is not going to make it' referring to Jackson. It is common knowledge in the plant that Roley told Edmund Gross, Black employee who works on the Melt Deck 'to get to work before I hang you.'" (Hammond Aff. p. 2, ¶ 4).

"Marty Long, Black, said that two (2) whites told him that Kenny Roley hung the hangman noose in the Maintenance shop on or about May 23, 2003." (Hammond Aff. p. 2, ¶ 4).

"During my employment, I heard from other Black employees that Kenny Roley, white foreman, gave Edmund Gross, Black employee, a hangman's noose, but that's here say." (Hill Aff. p. 2, ¶ 1).

### 2. Conclusory statements

"[C]onclusory allegations without specific supporting facts have no probative value."

Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir.2000) (quoting Evers v. General

Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)).   Many of the statements objected to by

Citation as conclusory constitute statements of the declarant's feelings or opinions.  For instance,

McKenzie averred that he was "concerned about the racial discrimination" and that it was his

"opinion that the grievance process with Citation was not taken seriously."  While such

statements may be offered to show McKenzie's subjective belief that he was being discriminated

against[4], they may not be used to demonstrate that discrimination was actually occurring.  See

English v. CSA Equipment Co., LLC, 2006 WL 2456030, *5 (S.D. Ala. 2006) ("Statements of

speculation or personal belief are generally not proper and are not considered on summary

judgment." citations omitted).  Thus, the court does not find it appropriate to strike such

averments but will consider them accordingly.   Statements that purport to offer the feelings and

opinions of persons other than the declarant  will also not be considered because the declarant

lacks personal knowledge of such facts.[5]  See FED. R. CIV. P. 56(e).

Citation objects to several averments in Boggan's affidavit as conclusory.  However,

_____

[4] As explained infra, the requirement that the harassment be severe or pervasive contains both an objective and subjective component. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002).  It is this subjective component for which plaintiff's statements of belief may be offered.

[5] For instance, McKenzie's statement that "At the time I was interrogated, the employer had concluded that I was guilty" and his contention that "other African American employees were constantly fearful of being physically harmed" purport to offer the beliefs or feelings of other persons.  While an affiant may offer specific observations that support such statements, conclusions about another person's feelings and opinions are clearly not appropriate.

none of the averments cited appear to be conclusory but, instead, aver specific racial slurs that Boggan allegedly witnessed or refer to Boggan's subjective belief concerning his options under the circumstances.  As, explained above, the court will consider Boggan's belief statements only for the purpose of demonstrating Bogan's subjective belief.

The following statement in Hammond's affidavit:

"The truth of the matter is that Barney Bain, Barbara Moncrief and the Union Representative are aware of Roley's and other White supervisors conduct, but they work together to cover it up and lie about it."

(Hammond Aff p. 3, ¶ 1) is **STRICKEN** as conclusory or for lack of personal knowledge.  The court finds that Hammond's statement concerning his belief that he was removed from the forklift for retaliatory reasons is not conclusory.  It merely states his belief and specifies the reason for his belief.  The court will consider the statement only for the purpose of demonstrating Hammond's subjective belief.

The court finds that the statements by Gross that are objected to are not conclusory. Gross' affidavit follows the statements up with allegations of specific incidences that would support Gross' contentions and Gross' statements of belief will be considered accordingly.   The court also does not find it necessary to strike Hill's or Watson's averments as conclusory.[6]

---

[6] Statements that someone is an "awful person" or that "[y]ou have to be careful what you say around here or you could lo[]se your job" are not particularly probative by themselves, but to strike them is also of little consequence under the present circumstances.  This case is before the court on summary judgment and is not yet before a jury.  The court finds it to be a waste of judicial economy to strike through every phrase that is of questionable probative value in each of the numerous affidavits submitted.  Many of the objectionable statements consist of both objectionable phrases and appropriate factual evidence.  The court is capable of considering only the admissible, relevant and proper portions of the evidence submitted and knows that a person's belief that supervisory personnel are biased is not sufficient, by itself, to support a hostile environment claim.  The court further notes that many averments that do not specifically state that they are beliefs or opinions are obviously just that.  For example, Hill's contention that

### 3. Contradictory prior sworn testimony

An affidavit may be stricken as a sham when it directly contradicts, without explanation, a witness's previous sworn testimony. See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003). "However, the court must be careful not to confuse a 'sham' affidavit with an unpersuasive one." Wells v. Xpedx, a Div. of International Paper Co., 2006 WL 3133984, *3 (M.D. Fla. 2006). "When statements in a party's affidavit differ or vary from its other evidence before the court, the discrepancies create an issue of credibility, or go to the weight of the evidence, and should be resolved by the trier of fact." Id. citing Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986) (citation omitted)

Several of the statements objected to as contradictory do not contradict prior sworn testimony. For instance, McKenzie's resignation letter does not contain sworn testimony and cannot be the basis for striking portions of his affidavit. In addition, many of the statements Citation wants stricken are contained in affidavits that were made prior to the contradictory testimony. As such, the affidavit cannot be a sham affidavit created for the purpose of raising an issue of material fact in this case. Moreover, most of the statements are not inherently contradictory. For instance, Boggan's statement that he did not follow the anti-harassment policy because "there was no policy posted as she stated" is different, but does not directly contradict Boggan's admission that he was familiar with Attachment A and made no complaint

---

"Roley is an awful person" is obviously nothing more than Hill's personal opinion. This opinion explains or clarifies the remainder of the sentence which states "and I stay away from him." The court will, naturally, give such weight and credence to the affidavits and attachments as the law permits.

under that attachment.[7]  The fact that Boggan is familiar with Attachment A does not mean that

the anti-harassment policy was posted or that Boggan knew the details of Citation's anti-

harassment policy in February and March of 2003 when the events discussed in his affidavit

occurred.   It is also unclear what "as she stated" means.    Likewise, Hammond's statement that

he received no training on race discrimination does not directly contradict his admission that he

was familiar with Attachment A.  The admission does not state that he became familiar through

training, just that he was familiar.  None of the statements objected to on the ground of

contradiction warrant exclusion.

### 4. Proper Authentication

Evidence produced by the nonmoving party to avoid summary judgment need not be in

admissible form if it could be reduced to admissible form at trial. See United States v. Four

Parcels of Real Prop., 941 F.2d 1428, 1444 (11th Cir.1991) (citations omitted).  However, to be

considered in support of or in opposition to a motion for summary judgment, a document must

be authenticated, either by an affidavit that meets the requirements of Rule 56(e), FED.R.CIV.P.,

or in accordance with the Federal Rules of Evidence. Williams v. Eckerd Family Youth

Alternative, 908 F.Supp. 908, 911 (M.D.Fla.1995) (citations omitted).  Federal Rule of Evidence

901(a) provides that "[t]he requirement of authentication or identification as a condition

precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter

in question is what the proponent claims." FED.R.EVID. 901(a).

In this case, although Citation lists proper authentication as a basis for its motion, it is

unclear what specific document it asserts lacks authentication.  To the extent Citation objects to

---

[7] Attachment A contained Citations anti-harassment policy.

evidence of court filings, the court may take judicial notice of such records. Thus, the court **DENIES** Citation's motion to the extent it is based on lack of proper authentication.

### 5. Best Evidence

The Best Evidence Rule  provides, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." FED.R.EVID. 1002.  Citation objects to the following statement: "Even though some of the people had allegations of sex discrimination, the majority of the charges were alleging various forms of racial discrimination." (McKenzie Aff. p. 2 ¶ 1).  It does not appear that McKenzie's testimony, while related to the EEOC charges, is offered in an attempt to prove the specific contents of those records.  A witness with personal knowledge of a fact may testify to that fact even though the facts observed may also be contained in a document. United States v. Howard, 953 F.2d 610, 613 (11th Cir.1992).  Accordingly, the court will not strike the  testimony on the basis that it is not the best evidence.

### 6. Relevancy

Material from a summary judgment submission may be stricken where material is "redundant, immaterial, impertinent or scandalous," pursuant to Rule 12(f), FED.R.CIV.P. Striking matter on Rule 12(f) grounds is a drastic, disfavored remedy. See, e.g., Sierra Club v. Tri-State Generation and Transmission Ass'n, Inc., 173 F.R.D. 275, 285 (D. Colo.1997) ("Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy."); Judicial Watch, Inc. v. U.S. Dept. of Commerce, 224 F.R.D. 261, 263 (D.D.C. 2004) (matter is "scandalous for the purposes of Rule 12(f) when it ... unnecessarily reflects on the moral character of an individual or states anything in repulsive language that

detracts from the dignity of the court"); <u>Poston v. American President Lines, Ltd.</u>, 452 F.Supp. 568, 570 (S.D. Fla.1978) ("Motions to strike on the grounds of insufficiency, immateriality, irrelevancy and redundancy are not favored").

Citation seeks to strike the EEOC determinations asserting that they are prejudicial, unreliable, and cumulative.  However, EEOC reports and findings have been held to be admissible and even "highly probative" evidence in actions before a judge, as in a bench trial or upon motion for summary judgment.[8]  <u>See</u> <u>Barfield v. Orange County</u>, 911 F.2d 644, 649 (11th Cir. 1990) (listing cases).  "EEOC investigative reports and determinations and a transcript of proceedings involving an unemployment compensation claim were admissible under Fed.R.Evid. 803(8), the exception to the hearsay rule for reports of public agencies." <u>Id.</u> (footnote omitted).

Having reviewed the evidence the court finds that none of the material is so objectionable that it should be stricken.  The court likewise declines to strike any of the material objected to as irrelevant as this case is not before a jury.  The court is capable of considering only the relevant and proper portions of the evidence submitted and will discuss the relevancy of the evidence in its analysis.

**II. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[8] The analysis may be different if the evidence were to be offered before a jury.  "The admission of an EEOC report, in certain circumstances, may be much more likely to present the danger of creating unfair prejudice in the minds of the jury than in the mind of the trial judge, who is well aware of the limits and vagaries of administrative determinations and better able to assign the report appropriate weight and no more." <u>Barfield</u>, 911 F.2d at 651.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."   The trial court's function is not "to

weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere

existence of some evidence to support the non-moving party is not sufficient for denial of

summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury

to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002)

(quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." Anderson, at 249-250. (internal citations

omitted).

　　　The basic issue before the Court on a motion for summary judgment is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  See Anderson, 477 U.S. at 251-252.

The moving party bears the burden of proving that no genuine issue of material fact exists.

O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of

the moving party, the court must view all evidence in the light most favorable to the non-moving

party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle

Glade, 178 F.3d 1175, 1187 (11th Cir.1999).   "If reasonable minds could differ on the

inferences arising from undisputed facts, then a court should deny summary judgment." Miranda

v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank

& Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

　　　Once the movant satisfies his initial burden under Rule 56(c), the non-moving party

"must make a sufficient showing to establish the existence of each essential element to that

party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil

Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## III. Judicial Estoppel

Citation contends that McKenzie should be estopped from asserting his claims because he failed to include his claims as a potential asset in his bankruptcy estate.

> Judicial estoppel is an equitable doctrine that precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." See Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1284 (11th Cir. 2002).  The doctrine exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001)). . . .

> The applicability of judicial estoppel largely turns on two factors. Id.  First, a party's allegedly inconsistent positions must have been "made under oath in a prior proceeding."  Id. (quoting Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir. 2001), cert. granted and judgment vacated, 537 U.S. 1085, 123 S. Ct. 718, 154 L. Ed. 2d 629 (2002)). Second, the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Id. (quoting Salomon Smith Barney, Inc., 260 F.3d at 1308). "[T]hese two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine."  Id. at 1286.

Barger, 348 F.3d at 1293-94.   The purpose of the doctrine is to prevent parties from making a "mockery of justice by inconsistent pleadings."  Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (quoting American Nat'l  Bank of Jacksonville v. Federal Dep. Ins. Corp., 710 F.2d 1528, 1536 (11th Cir. 1983)).   "[T]he doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence. Id. at 1286 (citing American Nat'l Bank, 710 F.2d at 1536).  The Eleventh Circuit has concluded that a debtor's failure to disclose claims can be construed as unintentional only when "the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Burnes, 291 F.3d at 1287 (quoting In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir.1999)).  This two prong test has consistently been used by the Eleventh Circuit to determine whether judicial estoppel applies to preclude an undisclosed lawsuit.  See Id.; Barger, 348 F.3d at 1295; DeLeon v. Comcar Indus., Inc., 321 F.3d 1289, 1291 (11th Cir.2003).

In this case, McKenzie had no motive to conceal this lawsuit.  Motive for nondisclosure in a Chapter 13 case is usually provided by the fact that the debtor proposes to pay creditors less than what they are owed.  Unless the debtor's plan provides for 100% payment to unsecured creditors, nondisclosure would allow the debtor to recover proceeds that would otherwise have to be paid out to creditors.   A Chapter 13 debtor, like McKenzie, who paid all of his creditors 100% of their claims would not be motivated to conceal a potential asset.  Because McKenzie's bankruptcy plan paid out 100% to all creditors, including unsecured creditors, the addition of an asset would not have increased the amount McKenzie had to pay.   As such, McKenzie did not make a mockery of justice by failing to include this lawsuit as an asset in his bankruptcy schedules and this court therefore finds that judicial estoppel does not apply.

## IV. Disparate Treatment and Retaliation Claims

Plaintiffs state in their response to the motion for summary judgment that they "waive[]

and dismiss[] the individual disparate treatment claims and claims of retaliation" (Doc. 48, p. 4,

fn 4).  Moreover, plaintiffs have not supported such claims with evidence or argument.  "In

opposing a motion for summary judgment, a 'party may not rely on his pleadings to avoid

judgment against him.'" Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir.

1995), cert. denied sub nom., Jones v. Resolution Trust Corp., 516 U.S. 817 (1995)(citing Ryan v.

Int'l Union of Operating Eng'rs., Local 675, 794 F.2d 641, 643 (11th Cir. 1986)).  Moreover,

"[t]here is no burden upon the district court to distill every potential argument that could be made

based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to

formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment

are deemed abandoned." Id. at 599 (citations omitted).   Therefore, summary judgment is due to

be granted in favor of defendant as to plaintiff's disparate treatment and retaliation claims.


**V. Hostile Work Environment Claims**

Plaintiffs allege that conditions permitted by Citation amounted to a hostile work

environment.  A hostile work environment claim is established:

> upon proof that "the workplace is permeated with discriminatory intimidation,
> ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of
> the victim's employment and create an abusive working environment."   Harris v.
> Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295
> (1993).  This court has repeatedly instructed that a plaintiff wishing to establish a
> hostile work environment claim show:  (1) that he belongs to a protected group;
> (2) that he has been subject to unwelcome harassment;  (3) that the harassment
> must have been based on a protected characteristic of the employee, such as
> national origin;  (4) that the harassment was sufficiently severe or pervasive to
> alter the terms and conditions of employment and create a discriminatorily abusive
> working environment;  and (5) that the employer is responsible for such
> environment under either a theory of vicarious or of direct liability.  See, e.g.,
> [Mendoza v. Borden, 195 F.3d 1238,1245(11th Cir. 1999)] (applying these factors
> in the context of a hostile environment sexual harassment claim).

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

There is no dispute that plaintiffs, as African-Americans, are members of a protected

group.  As to the second criteria of a prima facie case, the court finds that plaintiffs have offered sufficient evidence indicating that they have been subjected to unwelcome harassment to survive a motion for summary judgment.  As to the third element, the court also finds that plaintiffs have produced sufficient evidence that the harassment was racially based.

The requirement that the harassment be severe or pervasive contains an objective and subjective component. Miller, at 1276.  "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." Id. (internal quotations omitted).  To establish the subjective component, the employee must "subjectively perceive" the harassing behavior as being sufficiently severe or pervasive to alter the terms or conditions of her employment. Mendoza, 195 F.3d at 1246.  The court finds that plaintiffs have offered sufficient evidence for a reasonable jury to find that plaintiffs subjectively perceive their environment at Citation to be abusive.

To establish the objective component, the hostile work environment is "judged from the perspective of a reasonable person in the plaintiff's position considering all of the circumstances." Id.  The factors to consider in making this determination include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 22-23.   "[E]mployees are entitled to a work environment that allows them to function effectively and to do the work they were hired to perform to the best of their ability without having to run a gauntlet of sexual abuse or face other forms of discrimination." Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1366 (11th Cir. 1999) (citation and internal quotations omitted). "Although we examine the statements and conduct complained of collectively to determine whether they were sufficiently pervasive or severe to constitute [racial] harassment, the statements and conduct must be of a [racial] nature ... before they are considered in determining whether the severe or pervasive requirement is met." Gupta v. Florida Board of

Regents, 212 F.3d 571, 583 (11th Cir.2000). "Innocuous statements or conduct, or boorish ones that do not relate to the [race] of the actor or of the offended party (the plaintiff), are not counted." Id.

In this case, most of the conduct and statements complained of, such as leaving nooses in the area or using words like "boy" or "nigger" to refer to African-American employees, is clearly race-related.  The word "boy" standing alone may be evidence of racial animus. Ash v. Tyson Foods, Inc., 546 U.S. 454, 126 S.Ct. 1195, 1197, 163 L.Ed.2d 1053 (2006).  On the other hand, evidence such as a supervisor cursing at African-American employees is not evidence of racial bias where the supervisor cursed equally at white employees.   Additionally, teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment. Mendoza, 195 F.3d at 1245.  Hammond's testimony that Kenny Roley kicked a black employee in the rear, although perceived as harassment by Hammond was admittedly nothing but horseplay according to the reported victim.

Citation asserts that the plaintiffs in this case were not subjected to "the daily slur-barrage/seven-noose-per-year facts" or "the four-slur-per-day-for months facts" that defeated summary judgment in other cases.  However, "[t]here is not simply some magic number of racial or ethnic insults that preclude summary judgment, but rather it is repeated incidents of ... harassment that continue despite the employee's objections [that] are indicative of a hostile work environment.  Mack v. ST Mobile Aerospace Engineering, Inc., 195 Fed.Appx. 829, 837 (2006) (citing Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir.2002), internal quotations omitted).

According to Citation, this case involves, at most, occasional teasing.  The court disagrees. Citation's arguments suggest that the court should only review conduct directed at the plaintiffs and should review the alleged abuse endured by each plaintiff in isolation to conclude that the conduct was not sufficiently severe or pervasive.  However, as the Eleventh Circuit has

22

explained:

> Our well-established precedent requires a court to evaluate the evidence "in context, [and] not as isolated acts, and ... under the totality of the circumstances." Mendoza, 195 F.3d at 1246. We disagree with the district court's characterization of the plaintiffs' case as one based largely on comments directed at third parties, or incidents that the plaintiffs only learned about from third parties. "The prima facie showing in a hostile work environment case is likely to consist of evidence of many or very few acts or statements ... which, taken together, constitute harassment.... [T]he jury does not necessarily examine each alleged incident of harassment in a vacuum." Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1510-11 (11th Cir.1989), overruled on other grounds, Harris, 510 U.S. at 22, 114 S.Ct. at 371 (emphasis added) (ruling that the evidence, viewed as a whole, established racial harassment, when a noose was twice hung at the plaintiff's work station).

Mack v. ST Mobile Aerospace Engineering, Inc., 195 Fed.Appx. 829, 838 (11th Cir. 2006).  In addition, "[a] plaintiff may have a viable hostile environment claim even if the racial remarks were not directed at her."  Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1522 (11th Cir.1995) (citing  Busby, 931 F.2d at 785. ); see also Hudson v. Norfolk Southern Ry. Co., 209 F.Supp.2d 1301, 1326 (N.D.Ga.2001) ("Plaintiff may support a claim of hostile work environment by the use of harassing conduct she learned of through hearsay, so long as she was aware of the harassing incidents at the relevant time at which she alleges she experienced the hostile environment." citations omitted).   Citation also asserts that incidents that occurred outside the 180 day limitations period are not actionable.  However, a hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1).

> The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S.Ct. 2061, 2074 (2002).  Although many of the acts upon which plaintiffs' claims rely occurred outside the 180 day filing

period, the court finds that they are part of the same actionable hostile environment claim.

Plaintiffs present evidence of many incidents of racial slurs and symbols being used or displayed in the work place. While much of the allegedly harassing conduct may not have been physically threatening, it is not unreasonable to infer that the overall atmosphere for Citation's African-American employees was racially demeaning and hostile. Clearly, the display of nooses in the workplace should not be cast aside as a light joke or teasing. A noose is a historical symbol of racial hatred for African-Americans and can represent a severe physical threat. See Russell v. American Eagle Airlines, Inc., 46 F.Supp.2d 1330, 1338 (S.D. Fla.1999) ("These incidents-of which the hanging of a noose is particularly appalling-have absolutely no place in our society, and there can be no doubt that such incidents would create a 'working environment[ ] so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers.'"). It is notable that the EEOC found that plaintiffs had been subjected to a racially hostile and intimidating work environment because of their race. While the events complained of occurred over a period of years, the court finds, after reviewing the evidence in the light most favorable to plaintiffs and considering all the circumstances, that they are sufficiently severe and pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. The plaintiffs in this case clearly believed they were being discriminated against, and the court finds that a reasonable person might agree.

Additionally, there is also sufficient evidence to avoid summary judgment with regard to the last criteria: that the employer is responsible under a theory of either vicarious or direct liability . Where the perpetrator of the harassment is a co-employee of the victim, the employer will be held directly liable only if it knew, or should have known, of the harassing conduct and failed to take remedial action. Breda v. Wolf Camera & Video, 222 F.3d 886, 889 (11th Cir.2000). A plaintiff can demonstrate the employer knew of the harassment "by showing that she complained to higher management of the harassment," or by demonstrating the "pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive

knowledge." Id.; Durham v. Philippou, 968 F.Supp. 648, 655 (M.D.Ala.1997) (quoting Huddleston v. Roger Dean Chevrolet, Inc., 845 F.2d 900, 904 (11th Cir.1988)).  Many of the harassing statements or conduct in this case were reported in grievances and discussed with management.  Moreover, most, if not all, of the offending conduct was perpetrated by plaintiffs' supervisors.   "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher v. City of Boca Raton, 524 U.S. 775, 777, 118 S.Ct. 2275, 2292-2293, 141 L.Ed.2d 662 (1998).  An employer may avoid vicarious liability by demonstrating "(a) that the employer exercised reasonable care to prevent and correct promptly any [ ] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 2293.

Remedial actions were undertaken to address many of plaintiffs' grievances.   To be appropriate, "[t]he 'remedial action' must be reasonably likely to prevent the misconduct from recurring." Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir.1996).   A review of the evidence indicates that the specific misconduct reported, once addressed by management, usually did not reoccur by the same perpetrator.  However, the sheer number of grievances and other complaints indicate that Citation did not successfully control the racial hostility at the facility.  "[T]he power and influence of an employer over the atmosphere in a workplace cannot be overstated." Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1366 (11th Cir. 1999).  Viewing the evidence in the light most favorable to plaintiffs, the court finds that Citation failed to exercise reasonable care to prevent any harassing behavior.  The court also finds that there is no evidence that plaintiffs failed to take advantage of any preventative or corrective

opportunities provided by the employer or to otherwise avoid the harm.[9]  As such, the court concludes that there is sufficient evidence that Citation is responsible to survive summary judgment.


## CONCLUSION

Accordingly, the court finds that Citations motion to strike plaintiffs' response (Doc. 50) is **DENIED**, Citation's motion to strike certain evidentiary submissions (Doc. 51) is **GRANTED in part** and **DENIED in part**, and Citation's motion for summary judgment (Doc. 34) is **GRANTED** as to plaintiffs' disparate treatment and retaliation claims and  **DENIED** as to plaintiffs' hostile environment claims.

**DONE** and **ORDERED** this 11th day of May, 2007.


/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] The court notes that plaintiffs did not file grievances under Citation's company anti-harassment policy.  However, plaintiffs filed many grievances through Citation's labor agreement with the Union and there is no indication that filing under the company policy would have better averted the harm.